**Jimmy W. HUFFMAN, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 54416.**

Supreme Court of Missouri,
Division No. 1.

March 9, 1970.

Patrick O. Freeman, Jr., Thayer, for appellant.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Appeal from order denying motion by Jimmy W. Huffman under Criminal Rule 27.26, V.A.M.R., to vacate and set aside sentence and judgment of life imprisonment and withdraw plea of guilty.

On October 8, 1946 appellant, then 16 years old, pleaded guilty to murder in the first degree and was sentenced to life imprisonment. In September, 1966 appellant, while serving his term in the penitentiary, filed this motion in the Circuit Court of Howell County, from which the venue was changed to Shannon County. Twice amended, this motion came on for hearing on numerous grounds stated in separate paragraphs lettered (a) through (q). A full evidentiary hearing was conducted. Appellant introduced the justice of the peace and circuit court records, testified personally, and adduced the testimony of his stepfather. Witnesses for the State were heard in the person of the sentencing judge, now retired; one of appellant's two court-appointed lawyers, and the former prosecuting attorney. The court took the case under advisement and after thorough consideration filed extensive findings of fact and conclusions of law on the several points raised by movant and entered an or-

der and judgment denying the relief prayed for and remanding appellant to the custody of the department of corrections. From this order and judgment appellant, allowed to appeal as a pauper, and ably represented by counsel, has taken this appeal.

Appellant assigns error in refusing to exclude witnesses from the courtroom during the trial of the motion. Appellant's counsel did not invoke the exclusionary rule prior to the commencement of the hearing. The first witness was the circuit clerk, called to identify official records in the case. After the clerk had been asked and had answered 14 questions and had produced 25 documents, which were identified and marked as exhibits, appellant's counsel asked the court to invoke the rule on the witnesses. While the clerk was testifying the former circuit judge, a highway patrol trooper, the incumbent magistrate, Mr. Robert Hyder, who served as one of appellant's lawyers in 1946, and the then prosecuting attorney had entered the courtroom. The judge stated that the rule not having been requested at the time the hearing commenced he did not feel that he should ask the witnesses to leave the courtroom thereafter and denied the request. In so ruling the court did not err. Appellant had no right to the enforcement of the rule excluding witnesses from the courtroom. Its application is a matter resting within the sound discretion of the trial judge. State v. Crider, Mo.Sup., 419 S.W.2d 13, 14 [5]. The witnesses who were allowed to remain in the courtroom were officers or former officers of the law. The circuit judge conducting the hearing presumably knew whether or not these witnesses were persons whose testimony would likely be influenced by their hearing that of others. State v. Tummons, Mo.Sup., 34 S.W.2d 122, 124 [4]. (The only testimony they could have heard was that of the circuit clerk, appellant and his stepfather.) Neither the testimony these witnesses gave nor anything revealed by this record indicates that any of them had

any special interest in the case adverse to that of appellant or that any one of them was prejudiced against him. State v. Hamilton, 340 Mo. 768, 102 S.W.2d 642, 648 [20]. No abuse of discretion was shown.

Next, appellant asserts that the court erred in its ruling because there was no transcript of the proceedings of October 6, 1946 available to appellant. Appellant claims that it was not only the statutory duty of the court reporter to take the evidence, under § 13340, RSMo 1939, now § 485.050, V.A.M.S., but also because the judge specifically ordered the court reporter to report the proceedings on that occasion; that appellant made five unsuccessful attempts after October 6, 1946, to obtain such a transcript, the first as early as March, 1953; that he sought the same as an indigent person and therefore was entitled to one free of charge; that he was free of fault and it was not due to his lack of diligence that the notes were lost or the transcript was not available; that he is entitled to such a transcript under the cases of Scharff v. Holschbach, 220 Mo.App. 1139, 296 S.W. 469; State v. McCarver, 113 Mo. 602, 20 S.W. 1058, and State v. Keeble, Mo.Sup., 427 S.W.2d 404; that the transcript would aid in disclosing the truth as to what happened at the hearing of this case in which "the legal proceedings from the first arrest up to the sentence are highly questionable and are rightly under attack."

The court did not err. The cited cases do not compel such a conclusion. The question is whether the proceedings of October 6, 1946 were irregular, illegal or demonstrate prejudice entitling appellant to the vacation of the sentence then imposed. The burden of proof on the issue rests upon appellant. We cannot presume that the transcript, produced, would demonstrate irregularity, illegality or prejudice. On the contrary, we presume that the actions of a circuit court are regular and legal. A finding that a convict was prejudiced in the proceedings leading to his con-

viction will not be made in the absence of evidence establishing prejudice. Although the nonavailability of a transcript and its apparent loss or disappearance is deplorable, its absence is not fatal to the validity of the conviction. The deficiency of the record does not necessarily require, upon application, that a plea of guilty be set aside. State v. Mountjoy, Mo.Sup., 420 S.W.2d 316, 323. The burden is on the defendant at the hearing on his motion to demonstrate, notwithstanding the deficiency of the record, that his plea of guilty was in fact involuntary or was made without an understanding of the nature of the charge, and that manifest injustice therefore resulted from the trial court accepting the plea. Mooney v. State, Mo.Sup., 433 S.W.2d 542, 544. The loss of or disappearance of a transcript is a fact of life with which those whose contentions rest upon such transcripts must contend, the same as the situation which confronts a party who rests his case upon the knowledge of a witness who is dead and whose testimony therefore is no longer available. State v. Keeble, supra, 427 S.W.2d 1. c. 409 [10].

■ Appellant's third assignment of error is that the plea of guilty was predicated upon a coerced written confession obtained from appellant in the State of Louisiana "which was held over appellant's head in the State of Missouri." At the time this crime was committed appellant was 15 years old. He had a 7th grade education. On his behalf there was testimony that he was arrested in Louisiana; that the highway patrol officers broke into the home, threatened to shoot anyone who "stepped out of turn" and that he was subjected to 5 or 6 hours of questioning at headquarters, during which he was slapped from the rear on the side of his face, causing him to fall and cut his chin on the corner of a desk; that officers wrote out a confession; that after being "slapped around quite a bit" he signed something. He did not know whether what he signed was a confession or not. It was never read to him and he did not read it. He testified that he was frightened, confused, had no attorney and no friends; that his stepfather was permitted to bring him clothes at the jail but was prohibited from talking with the boy. He was returned to West Plains, Missouri on July 12, 1946. He had no visitors at the jail. His first contact with an attorney was about a month later. An attorney named George Schubert talked to him about getting the court to try him in juvenile division. Such a motion was filed September 12, 1946. Mr. Robert Hyder, now Chief Counsel for the State Highway Department, was appointed attorney for appellant after the preliminary hearing, which was conducted on July 16, 1946. Appellant testified that local newspaper publicity was unfriendly; that the public sentiment toward him was that of hatred and dislike; that although he was not physically abused but was treated well by the Missouri officers, he was continuously frightened from time of arrest to time of sentence that he would be physically abused; that he was advised by his attorney that in view of the alleged written confession in Louisiana it would be best for him to plead guilty, otherwise he would get the gas chamber; that he had no friends; that he pleaded guilty because he was frightened and confused and because counsel advised him that if he did not plead guilty he probably would get the gas chamber. He further testified that at the time of sentencing the judge told him that the man appellant shot was a fine man and a good friend of his and that it was only his age that kept him from the gas chamber.

On the other side of the ledger, the then prosecuting attorney testified that he never had possession of any written confession or any knowledge of a confession made by appellant in Louisiana; that he did not at any time tell appellant that if he did not enter a plea of guilty he would be executed; that he observed appellant's demeanor in the courtroom on October 6, 1946 and that appellant appeared no more frightened or confused than he did at the hearing on his 27.26 motion; that he could not detect

that the boy was "scared." Mr. Hyder, appellant's appointed counsel, testified that he represented appellant for something like 2½ months prior to October 6, 1946; that George Schubert had represented him for "some time"; that during this time he talked with appellant several times—three times in a private room in the judge's chambers and once at his law office; that he conducted an independent investigation and did his utmost to fully advise appellant of the legal implications of his actions; that no promises or threats were made and there was no physical abuse or threats of violence against the person of appellant of which Mr. Hyder knew; that no pressure was put on appellant and that appellant made the decision alone to plead guilty; that he was never denied an opportunity to consult with appellant; that while there was some unwillingness on the part of witnesses and officials to talk to him at first, he persisted and obtained the information from them; that he knew of no fright or confusion on the part of appellant; that appellant did not tell Mr. Hyder that he was scared or confused; that while some of the public criticized Mr. Hyder for undertaking the defense his "skin was thick in that respect"; that he made a plea to the court for appellant because of the latter's background and youth; that the hearing occupied well over an hour in time; that the court questioned appellant at length; that appellant was "a very intelligent young fellow," and that his demeanor was "one of calm reaction rather than any sort of nervousness that [he] detected"; that if appellant was confused or frightened he did not show it to his lawyer at any time. The sentencing judge testified he had insisted upon two lawyers for appellant because it was his desire that he have "the best representation he could" and he thought the two attorneys appointed could and would give it and that appellant "was a real sharp, likeable kid." The former judge specifically denied telling appellant that he was charged with killing a friend of the judge's or that he would give him the death sentence if it were not for his age. The judge testified that he did not make the statement attributed to him by appellant; that he did not know the deceased and did not think that he ever had seen him; and that it never entered his mind "to give that boy a death sentence."

Appellate review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Criminal Rule 27.26 (j). "The prisoner has the burden of establishing his grounds for relief by a preponderance of the evidence." Criminal Rule 27.26 (f). Under the rule of Crosswhite v. State, Mo.Sup., 426 S.W.2d 67, 70, a review on the entire record does not leave this court with the definite and firm conviction that a mistake has been committed. We are unable to determine that the findings, conclusions and judgment of the trial court are clearly erroneous. On the contrary, we reach the same conclusion arrived at by the trial court, namely, that appellant's evidence was insufficient to establish that the plea of guilty was the result of coercion or threats. Although this is not a de novo review we are convinced on this record that appellant entered his plea of guilty voluntarily after advice of competent counsel and with full knowledge of the facts; that in spite of the youth and immaturity of appellant at the time, and his limited formal education, appellant was afforded counterbalancing, capable counsel and advice; that appellant was placed in full possession of all necessary knowledge and information about the alternatives facing him and the consequences of the choices open to him; that he was competent to make a reasoned choice and did so; and that his choice was not dictated by fear and did not arise out of a state of confusion but that it was made freely and intelligently. What we said in a similar situation is pertinent here. "Whether defendant's plea was induced by physical or mental coercion or duress presented an issue of fact for the trial court, whose findings are presumptively correct and are to be sustained unless clearly erroneous. This is not a de novo review. Crosswhite v. State,

**26**

supra. There was a conflict in the testimony on the issue of [continued fright and confusion stemming from the physical abuse in Louisiana of which appellant complained]. The circuit judge heard defendant's testimony and that of the officers who contradicted him. The trial judge had a full opportunity to judge of their credibility. He decided the credibility issue against defendant, * * *. We defer to the trial judge's superior opportunity to accurately appraise the veracity of the witnesses and on this review uphold the circuit court's finding * * *." Jefferson v. State, Mo.Sup., 442 S.W.2d 6, 9–10 [2].

Appellant's final point is that he should have his conviction vacated because he "was not afforded a preliminary hearing as required by the laws of the State of Missouri." He cites § 3893 RSMo 1939 (now § 544.250, V.A.M.S.), requiring a preliminary examination before a justice of the peace before any prosecuting attorney shall file any information charging any person with a felony, and § 3870 RSMo 1939 (now § 544.370, V.A.M.S.) requiring the evidence of the several witnesses in all homicide cases to be reduced to writing by the magistrate, or under his direction, and that it be signed by the respective witnesses. He points out that Exhibit 7, which "purports to be" a transcript of the testimony of the witnesses and proceedings at the "alleged" preliminary hearing was not signed by the witnesses as required by § 3870, and was not signed by the magistrate or court reporter. Conceding that a defendant can waive all or any part of a preliminary hearing by entering a plea of guilty or going to trial without objection and filing a plea in abatement, and citing State v. Langford, 293 Mo. 436, 240 S.W. 167, and State v. Jack, Mo.Sup., 209 S.W. 890, for that proposition, appellant claims that because of his tender age appellant cannot be said to have knowingly waived the statutory requirements and that he did not make a reasoned choice himself and that these requirements could not be waived by his counsel for him.

 Exhibit 7 shows on its face that a preliminary hearing was held. The then prosecuting attorney testified that a preliminary hearing was held. The circuit court found that a preliminary hearing was held, and instead of branding the circuit court's finding on this question clearly erroneous, we sustain and confirm the finding. Whatever other consequences might flow from a failure of the witnesses who testified at the preliminary hearing to sign their testimony, this technicality does not justify vacation of a conviction based upon a subsequent plea of guilty. Regardless of the question of waiver, the conclusion which appellant seeks to have us draw is a non sequitur.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and HENLEY, Alt. J., concur.

STORCKMAN, J., not sitting.